**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x

**KELLY McLEAN,** on behalf of herself and all
others similarly situated,                                          Case No. _____

                            Plaintiff,                   **CLASS ACTION COMPLAINT**
                -v-                                      **& DEMAND FOR JURY TRIAL**


**KURU FOOTWEAR,**

                            Defendant.


-----------------------------------------------------------------x


Plaintiff **KELLY McLEAN** ("Plaintiff" or "Ms. McLean"), individually and on behalf of

all others similarly situated, by and through her undersigned counsel, brings this action against

**KURU FOOTWEAR** ("KURU" or "Defendant") for violations of Title III of the Americans with

Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq., and parallel New York State and New York

City disability rights laws, arising from Defendant's failure to design, construct, maintain, and

operate its ecommerce website, **www.KuruFootwear.com**, in a manner that is accessible to blind

and visually impaired individuals.

### **INTRODUCTION**

1.      Plaintiff **Kelly McLean** is a resident of Bronx County and is permanently disabled

due to **Bietti's Crystalline Dystrophy**, a rare inherited retinal degenerative disorder that causes

progressive loss of retinal function and severe decline in visual acuity. Her treating optometrist at

Bronx Eye Associates confirms that Ms. McLean now has **"only minimal residual perception of**

**light and shapes"** and is "**almost completely blind**," with constricted visual fields, impaired night

vision, and profound functional sight loss. Her condition is permanent, irreversible, and progressive.

Exhibit A.

2.      As a legally blind individual, Ms. McLean relies exclusively on screen-reading

software and keyboard navigation to access digital content independently. Because she cannot visually interpret website content, she depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive elements, and screen-reader-compatible navigation. For Ms. McLean, accessible coding is not optional—it is the only means by which she can access the internet.

3.     In 2026, Ms. McLean sought to independently browse and purchase supportive footwear suitable for her severe visual impairment. Due to her near-total blindness, she requires stable, slip-resistant, supportive shoes to safely navigate her environment. She specifically attempted to research and purchase **KURU Footwear's Women's ATOM Slip-On (JetBlack)** and **Women's FLEX VIA (JetBlack/BrightWhite)**—products marketed for comfort, stability, and pain-relief support. These models appear prominently throughout KURU's product catalog and were among the pages she attempted to access.

4.     According to the United States Census Bureau, millions of Americans live with significant visual impairments, including more than two million who are legally blind. Congress enacted the ADA to eliminate discrimination against individuals with disabilities and ensure full integration and equal access. The Department of Justice has repeatedly affirmed that the ADA applies to the goods, services, and activities offered by public accommodations on the web.

5.     The internet has become an indispensable tool for modern life. It is a primary means of shopping, banking, learning, communicating, and accessing essential goods and services. For blind and visually impaired individuals, equal access to websites is critical to participating in society on equal terms. When websites are not designed to be compatible with screen-reading software, blind users are excluded from the digital marketplace and denied the independence that sighted users take for granted.

6.     Screen-reading software works by converting digital content into synthesized speech

or refreshable Braille. For this technology to function, website content must be capable of being rendered into text. Websites that lack alternative text for images, contain unlabeled buttons or links, use improper heading structure, rely on mouse-only interactions, or contain broken ARIA references cannot be interpreted by screen readers. As a result, blind users cannot navigate, understand, or interact with such websites, and are denied equal access to the goods and services offered.

7.    The World Wide Web Consortium (W3C) has published the Web Content Accessibility Guidelines (WCAG 2.1), which are widely recognized as the industry standard for accessible website design. These guidelines are followed by major corporations, government agencies, and public institutions to ensure that digital content is accessible to blind and visually impaired users. Compliance with WCAG 2.1 is readily achievable and necessary to provide equal access under the ADA.

8.    Plaintiff brings this civil action against **KURU Footwear**, the operator of **www.KuruFootwear.com**, for its failure to design, construct, maintain, and operate its highly interactive retail ecommerce platform in a manner that is fully accessible to blind and visually impaired individuals. Defendant's denial of full and equal access to its Website—and therefore to the goods and services offered therein—constitutes a violation of Plaintiff's rights under Title III of the ADA.

9.    On **February 11, 2026**, **February 13, 2026**, and **April 20, 2026**, Plaintiff attempted to access Defendant's Website using screen-reader technology to research and purchase the Women's ATOM Slip-On and Women's FLEX VIA shoes. She attempted to review product descriptions, sizing information, support features, and available colorways before completing a purchase.

10.    Despite multiple attempts across these **three dates**, Plaintiff was unable to independently complete her objectives due to pervasive access barriers. Automated SortSite audits

of the Website revealed **20 Level A accessibility violations across 330 pages**, including unlabeled buttons, missing alternative text, empty headings, inaccessible form controls, improper ARIA usage, and an **ARIA role=button element [that] is empty and has no accessible name**—identified on pages Plaintiff specifically attempted to use, including **https://www.kurufootwear.com/pages/bundles/fitness-bundle** and **https://www.kurufootwear.com/pages/bundles/work-bundle**. Exhibit B

11.    The Website also contained **severe visual accessibility hazards**, including flashing animated images exceeding WCAG thresholds—such as the "heel-comparison.gif" animation, which appears repeatedly across the site and cannot be paused or stopped.

12.    Defendant's Website further contained **broken links on more than 300 pages**, including empty href attributes and non-existent anchor targets, which disrupt navigation and prevent screen-reader users from accessing essential content. The SortSite Broken Link Report identified **321 pages** with empty URLs and **68 pages** with anchor links pointing to non-existent IDs.

13.    The accessibility barriers were systemic and not limited to isolated pages. The SortSite reports documented failures across product pages, category pages, navigation menus, bundles pages, and informational pages, confirming that Defendant's Website is not coded in a manner compatible with screen-reader technology and denies blind users equal access to the goods and services offered.

14.    Defendant operates a retail ecommerce platform through which consumers can browse footwear, review product-specific information, and purchase items directly online. Plaintiff specifically sought out Defendant because of its advertised selection of supportive, orthopedic, and pain-relief footwear, which she needs due to her profound visual impairment and mobility limitations.

15.    Plaintiff seeks a permanent injunction requiring Defendant to revise its corporate

policies, practices, and procedures to ensure that KuruFootwear.com becomes and remains accessible to blind and visually impaired users. Without remediation, Plaintiff and other blind consumers remain excluded from equal participation in Defendant's online marketplace.

## JURISDICTION & VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

17.     This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

18.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County, accessed Defendant's Website, www.KuruFootwear.com, from within this District, and experienced the discriminatory barriers alleged herein in this District. Various courts in this Circuit have repeatedly held that venue is proper where a plaintiff encounters website accessibility barriers. See *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.*, 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

19.     Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward New York consumers through its highly interactive ecommerce Website, www.KuruFootwear.com, which allows users to browse inventory, review product information, select sizes and colorways, create accounts, and complete purchases. Defendant ships products directly to New York residents and derives substantial revenue from sales to consumers in this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce

websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC*, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

20.     The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online.

21.     This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

**THE PARTIES**

22.     Plaintiff **Kelly McLean** is, and at all relevant times was, a resident of Bronx County, New York. Ms. McLean is legally blind and a member of the protected class of individuals under the Americans with Disabilities Act, 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the protections afforded under New York State and New York City law. As confirmed by her treating optometrist at Bronx Eye Associates, Ms. McLean has been diagnosed with **Bietti's Crystalline Dystrophy**, a rare inherited retinal degenerative disorder that has caused progressive retinal deterioration, constricted visual fields, impaired night vision, and "**severe reduction in functional sight**." Her provider further confirms that Ms. McLean is now "**almost completely blind, with only minimal residual perception of light and shapes**," and that her condition is permanent, irreversible, and progressive.

23.     Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies on keyboard navigation and accessible coding to browse, understand, and interact with websites. Because she cannot visually interpret printed or digital information without assistive technology, Ms. McLean depends on businesses to design, construct, and maintain their websites in a manner

that is compatible with screen-reading software.

24.    For Ms. McLean, accessible online shopping is essential to her independence. As a legally blind consumer, she cannot visually browse retail stores or product displays without assistance. She therefore relies heavily on accessible ecommerce websites to research, evaluate, and purchase products suitable for her mobility and safety needs. This includes supportive, slip-resistant footwear, which she requires due to her profound visual impairment and the heightened risk of falls associated with her condition. When websites lack proper alternative text, labeled controls, or navigable structure, Ms. McLean is unable to obtain the same information available to sighted shoppers and is denied equal access to the digital marketplace.

25.    Upon information and belief, **KURU Footwear** is an assumed business name registered in the State of Utah under Entity Number **9165290-0151**, with its principal place of business located at **4416 S Century Drive, Salt Lake City, Utah 84123**. Defendant owns, operates, and controls the commercial retail ecommerce Website **www.KuruFootwear.com** (the "Website"), through which it markets, displays, and sells footwear and related products to consumers throughout the United States, including residents of New York. Defendant derives substantial revenue from interstate commerce and transacts business within this District by offering its products for direct online purchase and shipment to New York consumers.

**STATEMENT OF FACTS**
*Plaintiff's Attempts to Access Defendant's Website*

26.    On **February 11, 2026**, **February 13, 2026**, and **April 20, 2026**, Plaintiff **Kelly McLean** attempted on three separate occasions to access Defendant's retail ecommerce Website, **www.KuruFootwear.com**,  using the NVDA screen reader on her home computer in Bronx County, New York. Because Ms. McLean is, in her treating optometrist's words, "almost completely blind, with only minimal residual perception of light and shapes," she cannot visually browse physical

retail stores, examine products on shelves, or evaluate footwear in person. She therefore relies entirely on accessible ecommerce websites to research, compare, and purchase footwear independently. Plaintiff visited Defendant's Website for the specific purpose of researching and purchasing supportive, slip-resistant footwear suitable for her daily mobility, balance, and fall-prevention needs, but was unable to do so due to pervasive accessibility barriers documented across the very pages on which Defendant displays and sells those products.

27.    Plaintiff specifically attempted to research and purchase two KURU products that Plaintiff identified as responsive to her mobility, stability, and safety needs: the Women's ATOM Slip-On (offered in JetBlack and other colorways) and the Women's FLEX VIA (offered in JetBlack/BrightWhite, MidnightBlue/BrightWhite, MistBlue/Apricot, and a wide-width JetBlack/BrightWhite). KURU markets both shoes for comfort, stability, arch support, and pain relief—features directly relevant to a near-totally-blind pedestrian. As a blind pedestrian, Ms. McLean must rely on her sense of touch, balance, and proprioception when walking, navigating sidewalks, crossing streets, and traveling through unfamiliar environments. Because she cannot visually detect cracks, dips, uneven pavement, curbs, or obstacles in her path, she requires footwear that provides dependable traction, cushioning, and stability to reduce the risk of tripping or falling. For Ms. McLean, selecting appropriate footwear is directly tied to her safety, mobility, and independence. She therefore attempted to evaluate these specific products online; however, as a blind consumer who cannot visually inspect shoes in physical stores, she depends entirely on accessible website content to understand product features, materials, support level, sizing, available colorways, and suitability for daily ambulation.

28.    On each of the three dates, Plaintiff attempted to perform the ordinary online shopping tasks that any sighted consumer would perform on **www.KuruFootwear.com**: (i) navigate from the home page and global menu into the Women's Shoes section; (ii) open the

individual product pages for the Women's ATOM Slip-On and Women's FLEX VIA; (iii) review product names, descriptions, support features, materials, available sizes (including wide-width), available colorways, pricing, and shipping information; (iv) use the Website's filtering tools to narrow the Women's Shoes catalog by her relevant needs (anti-slip, plantar fasciitis, orthopedic, fitness, fibromyalgia, neuropathy, Morton's neuroma, sandals, and beach); (v) consult the shoe size chart; (vi) add a selected pair to her cart; (vii) review warranty, return, and customer-support information; and (viii) proceed to checkout. The SortSite Accessibility Validation Report dated May 25, 2026 identified Level A WCAG 2.1 violations and other coding defects on the very pages Plaintiff attempted to use, which created concrete, specific barriers, including:

- Product images on the Women's ATOM Slip-On product page (womens-atom-smokegray-apricot-waterproof) and on multiple Women's FLEX VIA product pages (womens-flex-via-jetblack-brightwhite, womens-flex-via-mistblue-apricot, and womens-flex-via-wide-jetblack-brightwhite) were coded without descriptive alternative text and announced by NVDA only as "image" or by file name, depriving Plaintiff of information about shoe silhouette, color, sole type, and visible support features.
- Animated GIFs on the home page and across product, category, and guide pages—including "heel-comparison.gif" and "kuru-shoe-finder-quiz.gif," which the SortSite report flags as animated images over 5 seconds that cannot be paused or stopped (WCAG 2.1 A F7, Sec. 508 (2017) A F7)—distract and disorient screen-reader users and violate WCAG 2.2.2.
- Empty ARIA role=button elements and unlabeled interactive controls on bundle pages (including /pages/bundles/fitness-bundle and /pages/bundles/work-bundle) and elsewhere caused NVDA's focus to land on controls that announce no accessible name, preventing Plaintiff from understanding what any given button would do or whether activating it would add a product to her cart, open a filter, or navigate away from the page.
- Improper ARIA roles and broken ARIA references on category pages and on informational pages disrupted page structure and prevented Plaintiff from forming a coherent mental map of the Website, while filter controls on Women's Shoes collection pages (including /collections/womens-shoes-anti-slip, /collections/womens-shoes-orthopedic,

/collections/womens-shoes-plantar-fasciitis,    /collections/womens-shoes-fitness, /collections/womens-shoes-fibromyalgia,    /collections/womens-shoes-neuropathy, /collections/womens-shoes-mortons-neuroma,    /collections/womens-shoes-beach,    and /collections/womens-shoes-sandals) used <li> elements outside any <ol> or <ul> container, so NVDA did not voice the controls as a list and Plaintiff could not refine results by her actual needs.

- Empty headings on /pages/warranty-center and on the /products/womens-kala-2-jetblack product page, an HTML form control with no accessible name in the warranty center, and data-table coding defects on /pages/shoes-size-chart and the Women's Shoes collection page (table headers not marked with <th> and layout tables not marked role="presentation," in violation of WCAG 2.1 A F91) prevented Plaintiff from independently reviewing warranty and return information and from determining her correct shoe size before purchase.

As a result, Plaintiff could not reliably navigate Defendant's Women's footwear listings, could not independently evaluate the Women's ATOM Slip-On or Women's FLEX VIA product pages, could not operate the Website's filters, could not review warranty or return information, could not determine her correct size, and could not select any pair of shoes for purchase or complete checkout.

29.      Plaintiff also attempted to access additional Women's footwear category pages—including Women's Slip-Ons, Women's Walking Shoes, Women's Anti-Slip Shoes, Women's Plantar-Fasciitis Shoes, Women's Orthopedic Shoes, Women's Pain-Relief Footwear, Women's Sandals, and Women's Beach Shoes—because these pages contained overlapping product listings and shared navigation, filter, and cart components. The SortSite Accessibility Report documented missing alternative text, empty ARIA-role buttons, invalid ARIA attributes, unlabeled links, improper list structure (<li> elements outside any list container), and over-length flashing or animated images across these pages. These failures caused NVDA to read interactive elements as "button," "link," or "blank" without context, preventing Plaintiff from identifying, comparing, or selecting products.

30.    On each of the three dates, Plaintiff attempted to evaluate the Women's ATOM Slip-On and the Women's FLEX VIA to determine whether either shoe met her mobility, stability, and safety needs and would be a suitable purchase. Because the Website lacks accessible coding, Plaintiff could not obtain the same product information that sighted consumers obtain effortlessly—style, support construction, outsole, materials, sizing, available colorways, customer reviews, and warranty/return terms—and could not complete a purchase.

**Systemic Barriers Confirmed by SortSite**

31.    On **May 25, 2026**, Plaintiff's counsel conducted an automated accessibility and quality-assurance audit of **www.KuruFootwear.com** using the SortSite Accessibility and Quality Assurance Scanner from counsel's office in New York. The scan evaluated the Website's product pages, category pages, navigation menus, forms, and other interactive components, including the specific pages Plaintiff attempted to access. The resulting reports identified **20 Level A WCAG 2.1 accessibility violations across 330 pages**, including: missing alternative text on dozens of product and category-page images (including images on the Women's ATOM and Women's FLEX VIA product pages); empty ARIA role=button elements; invalid ARIA attributes; unlabeled links; improper list structure (<li> elements not contained in <ol> or <ul>); empty headings on the warranty center and on at least one product page; an HTML form control with no accessible name in the warranty center; data tables coded without proper <th>/role markup on the shoe size chart and the Women's Shoes collection; iframe elements without title attributes; and animated images exceeding five seconds that cannot be paused or stopped, in violation of WCAG 2.2.2. The accompanying SortSite Broken Link Report identified **321 pages** containing empty href/src strings—including a recurring broken "Start Shopping" link on the home page, on the Women's Shoes and Women's Sandals collection pages, on the account/login page, on /pages/contact, on /pages/faq, on /pages/feel-better, and on /pages/free-shoes—and **68 pages** containing anchor links

pointing to non-existent IDs. These findings confirm that the barriers Plaintiff encountered were systemic, widespread, and present throughout the Website at the time of her attempts to access it on February 11, 2026, February 13, 2026, and April 20, 2026.

32.     The combination of missing alternative text, unlabeled and orphaned form controls, broken ARIA references, improper heading structure, contrast failures, empty buttons, redundant links, broken "Start Shopping" links, and animated images that cannot be paused or stopped prevents blind users—including Plaintiff—from perceiving, navigating, and interacting with the Website on equal terms with sighted users.

> Product images of footwear were announced only as "image" (or by file name) with no meaningful alternative text, depriving Plaintiff of information about shoe style, silhouette, color, outsole, and visible support features.
>
> Filter controls on Women's Shoes collection pages were coded with ARIA attributes but lacked proper form labels and proper list structure, causing NVDA to announce them inconsistently or not at all and preventing Plaintiff from narrowing results to anti-slip, orthopedic, plantar-fasciitis, fitness, fibromyalgia, neuropathy, Morton's neuroma, or sandal options.
>
> Repeated empty buttons and unlabeled interactive elements caused NVDA's focus to jump unpredictably, preventing Plaintiff from understanding how many shoes were available, how to navigate the product grid, or how to add a pair to her cart.
>
> Skipped heading levels and improper ARIA roles disrupted the page's structure, preventing Plaintiff from forming a coherent mental map of the Website.
>
> Contrast errors and missing focus indicators made keyboard navigation inconsistent and disorienting.

Because of these barriers, Plaintiff could not reliably navigate Defendant's Women's footwear catalog, could not determine which shoes were suitable for her stability, anti-slip, and pain-relief needs, and could not select any item for further review or purchase.

33.     Plaintiff also attempted to access the Women's Slip-Ons and Women's Walking Shoes sections of the Website because these pages contained overlapping product listings, shared

navigation components, and similar filtering controls. The SortSite reports for these pages identified missing alternative text, empty ARIA-role buttons, invalid ARIA attributes, unlabeled links, improper list structure, and additional broken-link issues. These failures created additional barriers:

- NVDA announced interactive elements as "button," "link," or "blank," without context.

- Product cards for the Women's ATOM Slip-On, Women's FLEX VIA, and comparable shoes were read as a confusing sequence of unlabeled links and repeated text.

- Improper ARIA roles caused NVDA to skip or repeat sections, making navigation unpredictable.

- Missing alternative text prevented Plaintiff from identifying differences among shoe models or selecting items for comparison.

34.     On each of the three dates identified above, Plaintiff attempted to evaluate the Women's ATOM Slip-On and the Women's FLEX VIA to determine which would best provide the stability, traction, and arch support she needs to navigate her environment safely as a near-totally-blind pedestrian. Because the Website lacks accessible coding, Plaintiff could not obtain the same information available to sighted consumers and could not complete a purchase.

### Systemic Barriers Further Confirmed by SortSite Reports

35.     The SortSite reports confirm that the barriers Plaintiff encountered were not isolated to a single page but were systemic across the Website. The SortSite Accessibility Validation Report identified **20 Level A WCAG 2.1 violations across 330 pages**, and the SortSite Broken Link Report identified **321 pages** with empty URLs and **68 pages** with anchor links pointing to non-existent IDs. These findings demonstrate that Defendant's Website is not designed, constructed, maintained, or operated in a manner compatible with screen-reader technology.

36.     The combination of missing alternative text, unlabeled and orphaned form controls, broken ARIA references, improper heading structure, contrast failures, empty buttons, redundant

links, and animated images that cannot be paused or stopped prevents blind users from perceiving, navigating, and interacting with the Website on equal terms with sighted users.

**Plaintiff's Concrete Injury, Standing, and Intent to Return**

37.    Plaintiff's injuries are concrete, particularized, and ongoing. Plaintiff attempted to access Defendant's Website for the specific purpose of researching and purchasing supportive, stable, slip-resistant footwear suited to her near-total blindness and the heightened risk of falls that accompanies her permanent, progressive visual impairment. Her shopping objectives were personal, medically relevant, and tied to specific products (the Women's ATOM Slip-On and the Women's FLEX VIA) and specific product categories (Women's anti-slip, orthopedic, plantar-fasciitis, and pain-relief footwear) that Defendant markets to consumers with mobility and pain-management needs. As a direct and traceable result of the access barriers documented by the SortSite reports, Plaintiff was denied equal access to the goods, services, information, and privileges Defendant offers to sighted consumers, and was unable to complete the ordinary online shopping tasks of browsing, comparing, filtering, sizing, carting, reviewing warranty/return information, and purchasing footwear.

38.    Plaintiff remains genuinely and continuingly interested in purchasing footwear from Defendant and intends to return to www.KuruFootwear.com as soon as it is made accessible to blind users. Her intent to return is credible, specific, and not speculative because:

- She continues to require supportive, slip-resistant, stable footwear on a daily basis to navigate her environment safely, given her near-total blindness and the heightened fall risk associated with Bietti's Crystalline Dystrophy, a permanent, progressive, and irreversible condition that will not improve.

- Defendant offers specific products that Plaintiff has identified and attempted to purchase, including the Women's ATOM Slip-On and the Women's FLEX VIA, including its wide-width JetBlack/BrightWhite variant and additional colorways, and Defendant markets these and other shoes for stability, arch support, anti-slip traction, and pain relief, features directly responsive to Plaintiff's mobility and safety needs.

• Plaintiff intends to return to the Website, once it is made accessible, to compare the Women's ATOM Slip-On and Women's FLEX VIA against Defendant's other Women's anti-slip, orthopedic, plantar-fasciitis, and pain-relief offerings; monitor sales, promotions, restocks, and new colorways and styles in those categories; consult Defendant's shoe size chart, warranty terms, return policy, and customer-support information; confirm her correct size, including any wide-width need; add a chosen pair to her cart; and complete checkout.

• Plaintiff has already demonstrated a pattern of attempting to access the Website for the purpose of making a purchase, having returned on three separate dates, February 11, 2026, February 13, 2026, and April 20, 2026, despite the barriers she encountered, and she has no realistic alternative means of independently researching, comparing, and purchasing Defendant's specific footwear offerings, because she cannot visually browse physical retail stores or printed catalogs.

39. Defendant's continued operation of an inaccessible Website deters Plaintiff from attempting to use it again until it is remediated. Plaintiff has confirmed by independent SortSite audit, as recently as May 25, 2026, that Defendant has neither corrected the barriers she encountered nor adopted any policy, plan, or practice to ensure ongoing accessibility. Plaintiff's injury is therefore continuing, the threatened harm is real and immediate, and an injunction requiring remediation and adoption of an accessibility policy is necessary to redress that injury and to allow Plaintiff to participate in Defendant's online marketplace on equal terms with sighted consumers.

40. Defendant's failure to design, construct, maintain, and operate its Website in a manner compatible with screen-reader technology constitutes discrimination under Title III of the ADA. Defendant's inaccessible Website denies blind consumers, including Plaintiff, equal access to the goods and services it offers to the general public and prevents blind users from participating in the digital marketplace on equal terms.

## CLASS ACTION ALLEGATIONS

41. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

All legally blind individuals in the United States who have attempted to access www.KuruFootwear.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied equal access to the goods, services, and information offered thereon.

42.    Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York who have attempted to access www.KuruFootwear.com and were denied equal access to the goods, services, and information offered thereon.

43.    The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its footwear products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access the Website and have been denied equal access due to the systemic accessibility barriers confirmed by the SortSite audits.

44.    Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

45.     Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screen-reading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite reports.

46.     Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

47.     Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

48.     Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website. Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

## **FIRST CAUSE OF ACTION**
### **(Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)**

49.     Plaintiff Kelly McLean, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

50.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

51.     Defendant's Website, www.KuruFootwear.com, is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

52.     Defendant has failed to design, construct, maintain, and operate its Website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

53.     Defendant's Website, www.KuruFootwear.com, must be designed, constructed, maintained, and operated to comply with WCAG 2.1 Level A and Level AA so that blind and visually impaired consumers, including Plaintiff, can access the same goods, services, privileges, and advantages that Defendant offers to sighted consumers.

54.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

55.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

56.     The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)–(2)(A). Plaintiff has been denied full and equal access to Defendant's Website, www.KuruFootwear.com, has not been provided services that are provided to nondisabled patrons, and has been provided services that are inferior to those provided to nondisabled persons.

57.     Defendant has failed to take any prompt or equitable steps to remedy the discriminatory conduct, and the violations are ongoing. Upon information and belief, Defendant has received prior notice of these accessibility failures through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

58.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**("NYSHRL")**

59.     Plaintiff Kelly McLean, on behalf of herself and the Class and New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

60.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 et seq., covers the actions of Defendant.

61.     Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15

of N.Y. Executive Law § 292(21).

62.     Defendant, at all relevant times to this action, owns and operates a place of public accommodation, the subject Website, www.KuruFootwear.com,  within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

63.     Plaintiff has visited the Website on a number of occasions and has encountered barriers to her access that exist.

64.     Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

65.     Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

66.     Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a Website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of these sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities.  This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the

facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

67.     The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

68.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

69.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

70.     Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

71.     Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq*.

72.     Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's Website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered throughout the Website.

74.     A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

### THIRD CAUSE OF ACTION
### (Violation of New York State Civil Rights Law)
### ("NYCRL")

75.     Plaintiff Kelly McLean, on behalf of herself and the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

76.     Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

77.     Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

78.     No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

79.     § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental,

or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

80.     Defendant discriminates against Plaintiff and the Subclass under NYCRL § 40 because Defendant's Website, www.KuruFootwear.com, is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight-impaired.

81.     Defendant intentionally and willfully failed to remove the barriers on its Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

82.     Defendant has failed to take any steps to halt and correct its discriminatory conduct and continues to discriminate against Plaintiff and the Subclass members.

83.     Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id…*

84.     Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

85.     Plaintiff Kelly McLean, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

86.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful

discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

87.     Defendant is subject to the NYCHRL because it owns and operates the Website, www.KuruFootwear.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

88.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, making the goods, services, and information offered through the Website inaccessible to blind users. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

89.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide  a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

90.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

        a.     constructed and maintained a Website that is inaccessible to blind class

members with knowledge of the discrimination; and/or

b.     constructed and maintained a Website that, while sufficiently intuitive and/or obvious for sighted users, is inaccessible to blind class members; and/or

c.     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

91.    Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

92.    As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

93.    Defendant's actions violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

94.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

95.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

96.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**<u>FIFTH CAUSE OF ACTION</u>**
**(Declaratory Relief)**

97.    Plaintiff Kelly McLean, on behalf of herself and the Class and New York Sub-Class

Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

98.     An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and N.Y.C. Admin. Code § 8-107, et seq., prohibiting discrimination against the blind.

99.     A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;

- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.KuruFootwear.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG 2.1-conforming accessibility measures and an enforceable internal accessibility policy;

- A declaration that Defendant owns, maintains, controls, and/or operates its Website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;

- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing her counsel as Class Counsel;

- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and

- Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
May 28, 2026

Respectfully submitted,
Joseph & Norinsberg, LLC
Attorneys for Plaintiff
By: */s/ Robert L. Schonfeld*
Robert L. Schonfeld, Esq.
825 Third Avenue, Suite 2100
New York, New York 10022
(212) 227-5700
rschonfeld@employeejustice.com